Philip and Linda
BOATRIGHT, Appellants,

v.

TEXAS AMERICAN TITLE COMPANY,
Harold F. Harris, and Southern Title
Guaranty Company, Appellees.

No. 08–89–00246–CV.

Court of Appeals of Texas,
El Paso.

April 18, 1990.
Rehearing Overruled May 16, 1990.

Douglas M. McIntyre, Houston, for appellants.

Eugene H. Pitman, DeLange, Hudspeth and Pitman and J. Preston Wrotenberry, Hirsch, Glover, Robinson & Sheiness, Houston, for appellees.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

FULLER, Justice.

After the jury awarded Appellants' damages, the trial court set aside the award and instead entered judgment against the Appellants for approximately $45,000.00. We reverse.

## FACTS

For simplicity sake, we shorten the name of the parties and entities:

(1) Philip and Linda Boatright—(Boatrights);

(2) Texas American Title Company—(Texas American);

(3) Southern Title Guaranty Company—(Southern);

(4) Akro–Tex, Inc.—(Akro–Tex);

(5) Meadowbrook, Ltd.—(Meadowbrook);

(6) Attorney Harold F. Harris—(Attorney Harris).

## THE BOATRIGHT PURCHASE

The Boatrights negotiated for the purchase of 2.013 acres of land from Meadowbrook, Ltd. In addition to cash, the Boat-

rights executed a note payable to Meadow-brook for $63,200.00. A deed of trust secured the payment of that note. Meadow-brook, Ltd. in turn executed a general warranty deed to the Boatrights retaining a vendor's lien. This transaction was handled through Texas American, as escrow agent.

## THE BOATRIGHT SALE

The Boatrights entered into almost immediately what has been referred to as a "FLIP TRANSACTION", meaning that they found an immediate buyer for the property. An earnest money contract was entered into by the Boatrights providing for the sale of the acreage to Akro–Tex, Inc. Texas American was again the designated escrow agent and handled the closing of this sale. As consideration for the purchase, Akro–Tex paid approximately $33,000.00 cash and executed two promissory notes: (1) one for $63,200.00 and (2) one for $36,025.00. The agreement provided that the notes would be secured by deeds of trust. At time of closing, the Boatrights executed a general warranty deed with a vendor's lien to Akro–Tex. However, the warranty deed failed to mention the prior lien of Meadowbrook. This was only the beginning of the problems. A deed of trust was executed and filed as to the $63,200.00 note indebtedness from Akro–Tex to the Boatrights. The deed of trust that was to be prepared and filed to cover the $36,025.00 note indebtedness was never filed of record, unknown to the Boatrights.

Texas American was the agent of Southern Title Guaranty Company which issued the owner's policy of title insurance thereby guaranteeing to Akro–Tex a good and indefeasible title. This title insurance policy was paid for by the Boatrights.

## FORECLOSURE

Akro–Tex made only three payments on the $36,025.00 note resulting in the Boatrights hiring an attorney, Harold F. Harris, to pursue collection. Attorney Harris, by letter dated February 5 or 6 1985, gave notice to Akro–Tex of its default in the $36,025.00 note. The letter further stated that the note was secured by a recorded deed of trust which:

(1) Was untrue because there was not a recorded deed of trust on that particular note given by Akro–Tex to the Boatrights;

(2) In addition Attorney Harris had never seen, was never furnished, nor did he attempt to check to see if such deed of trust was in existence.

After receipt of the demand letter, Akro–Tex attempted to tender the delinquent payments that were due on the $36,025.00 note. In the meantime, Attorney Harris executed a "Substitute Trustee's Deed." This instrument asserted that the $36,025.00 note by Akro–Tex to the Boatrights was secured by a deed of trust referring to the Harris County recording number for the deed of trust.

This was a blatantly untrue statement since the evidence at trial indicated that Attorney Harris had never seen the deed of trust and certainly had no knowledge of its recording date. In truth and in fact, the Harris County file number referred to by Attorney Harris on the substitute trustee's deed as being the deed of trust file number was actually the file number for the general warranty deed. The effect of this substitute trustee's deed was to attempt to convey the property sold to Akro–Tex back to the Boatrights by authority of a power of sale contained in a nonexistent or at least a non-recorded deed of trust.

Attorney Harris then wrote Akro–Tex informing it that since the note had been in default, the balance was accelerated and notice of sale of the property had been posted at the Harris County Courthouse. The letter then stated that pursuant to the notice of sale, the property was sold on March 5, 1985 at public auction. Akro–Tex was told that therefore it had been divested of its interest in the property.

Attorney Harris then wrote his clients (the Boatrights) a letter dated April 3, 1985, enclosing the original substitute trustee's deed telling them the effect of which was to divest Akro–Tex of title and reconvey the property to them.

There is no escape from these conclusions as shown by evidence and exhibits introduced at trial:

(1) That the Boatrights transferred the property to Akro–Tex with documents and instruments that contained no mention that the property already was encumbered with the Meadowbrook lien; and (2) that the foreclosure thereafter on the Akro–Tex property by the Boatrights by virtue of the power of sale provided in a nonexistent or unrecorded deed of trust was improper; (3) that Texas American was the escrow agent on the Meadowbrook and Akro–Tex transactions. Further, in regard to such transactions, Texas American was acting in a fiduciary capacity and charged with the duty to properly see that the necessary title documents were executed and recorded; (4) that Southern was the underwriter of the title insurance policies issued through its retail agent, Texas American; (5) that the Boatrights paid Texas American the fee charged for the issuance of the owner's title insurance policy to Akro–Tex. Such policy as issued contained no mention of the prior lien of Meadowbrook; (6) that Harold Harris was hired by the Boatrights to pursue whatever legal course was available to them in collecting the indebtedness due them from Akro–Tex. Harris later represented to the Boatrights that the divestiture of the property from Akro–Tex was completed and ownership was vested in them; (7) that thereafter, the Boatrights, believing they owned the property without any problems found a buyer and proceeded to use Texas American as the escrow agent. They then found out for the first time that Texas American in a title commitment report noted that the foreclosure on Akro–Tex's interest by Attorney Harold Harris had been "INVALID." This resulted in the lost sale of the property; (8) that as a result of the lost sale, the Boatrights were unable to meet the indebtedness they owed to Meadowbrook; (9) that Meadowbrook foreclosed on the property due to nonpayment by the Boatrights of the promissory note executed by them in favor of Meadowbrook. Foreclosure was by virtue of the power of sale granted in the deed of trust executed by the Boatrights to secure the promissory note given to Meadowbrook.

## THIS LITIGATION

Akro–Tex filed suit against Harold Harris as trustee, the Boatrights and Southern detailing the invalid foreclosure conducted by the Boatrights through their attorney, Harold Harris. The pleadings set out the conveyance of the property by the Boatrights to Akro–Tex by a general warranty deed without any mention of the existence of the prior lien given to Meadowbrook. Akro–Tex sought actual and exemplary damages alleging breach of warranty of title, violations of the Texas Deceptive Trade Practices Act, fraud and misrepresentation.

Southern settled with Akro–Tex, taking an assignment of Akro–Tex's cause of action against the Boatrights alleging that the Boatrights breached their warranty of title by executing a general warranty deed when there was in existence the prior lien of Meadowbrook. Since Southern settled with Akro–Tex and took an assignment of its cause of action, it claimed it was entitled to be compensated from the Boatrights for their breach of warranty of title.

The Boatrights pleadings (by way of answer and cross-action) sought damages resulting from the negligence of Attorney Harold Harris, Texas American, Attorney Joel M. Scott and Southern. Allegations were that Joel M. Scott actually prepared the legal papers for Texas American; that Texas American was the agent of Southern and failed not only to properly record all the instruments but failed to note on the title insurance policy issued to Akro–Tex the valid first lien of Meadowbrook that existed on the property. Besides asserting actions of negligence, resulting in the lost sale after the invalid foreclosure, the Boatrights pled violations by Southern of the Tex.Bus. & Com.Code Ann. sec. 17.41 et seq. (The Consumer Protection Act), violations of Article 21.21, sec. 4 of the Texas Insurance Code (Vernon 1981) as well as violations of the Texas Deceptive Trade Practices Act.

Breaches of fiduciary duty were asserted against Attorney Harold Harris and Texas American. Indemnity was sought against Attorney Harold Harris, Texas American and Attorney Scott in the event of any damages being awarded to Southern. In addition, the Boatrights sought attorney's fees, prejudgment interest and the trebling of any actual damages recovered.

Trial to a jury commenced and after all parties had concluded their evidence, the trial court granted an instructed verdict for Joel M. Scott. The motions for instructed verdict filed by Texas American and Harold Harris were not granted.

## THE COURT'S CHARGE AND THE VERDICT

The trial court submitted to the jury eight questions and the effect of their answers were a finding that:

(1) Texas American Title Company did breach their fiduciary duty in failing to obtain the deed of trust securing the $36,025.00 note;

(2) The breach of duty was a proximate cause of the damages to the Boatrights;

(3) The negligence of Texas American Title Company, Harold Harris and the Boatrights proximately caused the damages to the Boatrights;

(4) The percentage of negligence attributable to the parties was (a) Harold Harris seventy percent; (b) Texas American Title Company twenty-five percent and (c) the Boatrights' five percent;

(5) The Boatrights' damages were set at $55,000.00;

(6) Texas American was found grossly negligent;

(7) Resulting in $32,000.00 exemplary damages awarded to the Boatrights;

(8) Awarded twenty percent in attorney's fees to the Boatrights to be figured on the basis of the twenty percent of the amount of Boatrights' recovery.

The record before us is void of any objections to the court's charge.

## AFTER THE VERDICT

After the jury verdict which found in favor of the Boatrights, the following motions were filed:

(1) Southern Title Guaranty Company—Motion for Judgment;

(2) Texas American Title Company—Motion for Judgment N.O.V.;

(3) Harold F. Harris—Motion for Judgment N.O.V.;

(4) Philip H. Boatright and wife, Linda Boatright—Motion for Judgment upon the Verdict.

The trial court granted the motions of Southern, Texas American, Harold F. Harris and denied the Boatrights' Motion for Judgment upon the Verdict.

The trial court in granting Southern's Motion for Judgment awarded Southern a judgment against the Boatrights in the amount of $45,730.41 plus ten percent interest from the date of judgment.

## POINTS OF ERROR

■ Points of Error Nos. One, Two and Three assert that the trial court erred in granting Southern's Motion for Judgment because fact issues existed which prevented the trial court's action in finding that Southern was entitled to judgment as a matter of law. In viewing the "no evidence" or legal sufficiency challenge we must examine only that evidence and reasonable inferences therefrom, which when viewed in the most favorable light, support the verdict. If the favorable evidence amounts to more than a mere scintilla, which is more than a suspicion, then the legal sufficiency challenge must fail. *Stafford v. Stafford*, 726 S.W.2d 14 (Tex.1987); *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61 (Tex.1983).

■ In viewing the insufficient evidence or factual sufficiency challenge, we must review all of the evidence and the resulting reasonable inferences, and the challenge should be sustained only if the verdict was so contrary to the overwhelming weight of the evidence as to be clearly unjust and wrong. *Cain v. Bain*, 709 S.W.2d 175 (Tex.1986). We must not substitute our

judgment for that of the finder of facts, especially when evaluating the credibility of the testifying witnesses. *Clancy v. Zale Corporation,* 705 S.W.2d 820 (Tex.App.— Dallas 1986, writ ref'd n.r.e.).

■ No issues were submitted to the jury that might give rise to the Boatrights being liable to Southern. A judgment in Texas must be supported by the pleadings, the evidence and the jury's verdict. Tex.R. Civ.P. 301. When a jury renders a verdict, any issue which has not been submitted to the jury is waived. A judgment based on an omitted issue may not be rendered. *Sentry Insurance v. Siurek,* 748 S.W.2d 104, 106 (Tex.App.—Houston [1st Dist.] 1987, no writ). Since there were no issues submitted to the jury about whether the Boatrights were liable to Southern, then a judgment based on that liability may not be rendered. *Howard P. Foley Co. v. Cox,* 679 S.W.2d 58, 66 (Tex.App.—Houston [14th Dist.] 1984, no writ). The jury returned a verdict answering all eight submitted questions in the Boatrights' favor.

However, certainly this does not mean that issues must be submitted to the jury when there is no contradiction in the evidence dealing with the issues. *Transit Enterprises Inc. v. Addicks Tire & Auto Supply, Inc.,* 725 S.W.2d 459, 462 (Tex.App.— Houston [1st Dist.] 1987, no writ). This suit proceeded to trial upon Southern's petition in intervention as the assignee of Akro–Tex, seeking to recover damages from the Boatrights for breach of warranty of title.

■ Factual disputes existed as to whether damages and the amount thereof were suffered by Akro–Tex or its assignee Southern as a result of the breach of the covenant against encumbrances. The Boatrights argue that no damage was suffered by either Akro–Tex or Southern because the covenant against encumbrances gives rise only to the right of indemnification. *Wolff v. Commercial Standard Insurance Company,* 345 S.W.2d 565 (Tex. Civ.App.—Houston 1961, writ ref'd n.r.e.).

The Boatrights conveyed the property to Akro–Tex by a general warranty deed and Southern issued a policy of title insurance through its agent, Texas American, the effect of which was to guarantee Akro–Tex good and indefeasible title; but Texas American failed to list the Meadowbrook lien on the owner's policy issued to Akro–Tex. Akro–Tex initiated the lawsuit against the Boatrights and Southern took an assignment of Akro–Tex's cause of action by paying Akro–Tex $57,475.20.

The Boatrights paid for the title insurance policy that satisfied all of Akro–Tex's damages. The proper measure of damages for a warranty of good title is the consideration paid for the conveyance. *Sun Exploration and Production Company v. Benton,* 728 S.W.2d 35 (Tex.1987). Texas American as escrow agent owed a fiduciary duty to the Boatrights and admitted that the deed of trust pertaining to the $36,-025.00 note was never recorded in the County Clerk's Office of Harris County.

While Akro–Tex was in default on both promissory notes to the Boatrights when the alleged damages occurred, the Boatrights' breach of title occurred before the default. The warranty against encumbrances was breached upon the execution and delivery of the warranty deed because the Meadowbrook lien existed at the time of the execution of the warranty deed from the Boatrights to Akro–Tex. A prior lien is an encumbrance. *Triplett v. Shield,* 406 S.W.2d 941 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.). Thus, the Boatrights' obligation was breached upon delivery of the deed to Akro–Tex. Effective delivery of the general warranty deed occurred. Southern elected not to seek to recover against Texas American even though the escrow officer testified it was its duty to see that the proper documents (including deeds of trust) were drawn, executed and recorded.

As escrow agent, there was sufficient evidence for the jury to find that Texas American breached its fiduciary duty to the Boatrights. The Boatrights paid for an owner's title insurance policy to protect them from title defects. Clearly, there was evidence for the jury to consider that Texas American did not fulfill its fiduciary obligation. It is undisputed that Texas Ameri-

can was the escrow agent for both the Meadowbrook and the Akro–Tex transaction. It therefore had knowledge of indebtedness and liens involved. During these two transactions, Texas American was also acting as the retail agent for Southern.

Therefore, we have a situation where Texas American, knowing that the Meadowbrook lien was in existence, went ahead as a retail agent for Southern and allowed the title insurance policy to issue. Southern's liability only arose by the issuance of the title policy without excepting from coverage the Meadowbrook lien. This was the fault of Texas American as its issuing agent. That agent whose actions were found negligent by the jury resulted in losses to both Southern and the Boatrights.

Southern, Texas American and Attorney Harold F. Harris all were selling professional services, yet the effect of the trial court's finding as a matter of law is that the Boatrights were the "guilty culprits."

It would indeed seem strange that Southern should be made "whole" by punishing the only persons who lacked expertise and properly sought professional assistance. The actions of Attorney Harris and Texas American were properly before the jury and the jury verdict was supported by the evidence. The Boatrights' Points of Error Nos. One, Two and Three are sustained.

Point of Error No. Four asserts that the trial court erred in disregarding the jury verdict and entering judgments n.o.v. for Attorney Harris and Texas American.

■ With regard to the jury findings, the trial court could only render a judgment n.o.v. if a directed verdict would have been proper. Tex.R.Civ.P. 301. The trial court could set aside the jury finding only if there was no evidence to support the answer to the jury issue. *Goudie v. HNG Oil Company*, 711 S.W.2d 716 (Tex.App.—El Paso 1986, writ ref'd n.r.e.). In reviewing that determination, the appellate court must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Dodd v. Texas Farm Products Company*, 576 S.W.2d 812 (Tex.1979). If there is any support in the evidence for the verdict of the jury, the trial court may not disregard the findings and grant a judgment n.o.v. *Olin Corporation v. Cargo Carriers, Inc.*, 673 S.W.2d 211, 214 (Tex. App.—Houston [14th Dist.] 1984, no writ).

## TEXAS AMERICAN

■ When an escrow agent undertakes to act in an escrow relationship with the parties by performing such actions as preparing the escrow papers, advising both parties and accepting and cashing checks, a fiduciary duty arises between the escrow agent and both parties. *Chilton v. Pioneer National Title Insurance Company*, 554 S.W.2d 246, 249 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.).

■ Donald R. Conoway, senior vice president and general counsel for Southern, testified that title companies such as Texas American perform escrow functions in the ordinary course of their business and agreed that they hold critical real estate documents and money in escrow.

Dan Olivier, an attorney, offered as an expert by the Boatrights, testified that title companies acting as escrow agents owe a fiduciary duty to both closing parties. He testified that he would not perform a closing without the deed of trust and that a breach of fiduciary duty occurred to the seller if the escrow agent in the title company failed to deliver one of the two deeds of trust. Texas American admitted that a deed of trust covering the $36,025.00 note was never recorded.

Patricia Sweisthal, an escrow officer with Texas American that handled the Boatright—Akro–Tex transaction agreed that it is part of the function of an escrow officer to match the real estate documents just to see that everything has been done. She could not swear there was ever a deed of trust for the $36,025.00 note. She was asked: "And part of your responsibility as an escrow officer is seeing that you have the proper deeds of trust securing the notes involved?" She agreed and was then asked: "That much was not done?" She answered: "Evidently not." There was sufficient evidence before the jury to find

Texas American negligent. The elements needed to prove negligence, duty, breach and injury were presented. *National Medical Enterprises of Texas, Inc. v. Wedman,* 676 S.W.2d 712 (Tex.App.—El Paso 1984, no writ).

Gerald Anthony Colbert, a real estate broker, testified that all of the papers, including the deeds of trust were present at the closing. Texas American was to forward the documents to Akro–Tex.

There was sufficient evidence for submission of the issues as to the negligence of Texas American for jury determination and sufficient evidence to justify the jury's findings as to Texas American's negligence and the actual damages suffered by the Boatrights. We also find there was evidence that supported the jury's finding that Texas American was grossly negligent in failing to see that all supporting documents were executed and properly recorded, thereby indicating a conscious indifference as to the Boatrights' welfare. *Williams v. Steves Industries, Inc.,* 699 S.W.2d 570 (Tex.1985).

### ATTORNEY HAROLD F. HARRIS

■ The jury found that the Boatrights' attorney, Harold F. Harris was negligent. Harris owed a fiduciary duty to the Boatrights. *Willis v. Maverick,* 760 S.W.2d 642 (Tex.1988). Harris was hired by the Boatrights to attempt to collect the past due installments owed by Akro–Tex. He wrote two letters and finally foreclosed on the property and indicated to the Boatrights that the foreclosure was successful. However, the evidence also indicates that Harris never verified or checked to see that the note in default was actually secured by a deed of trust. In fact, the substitute trustee's deed executed by Harris contained false and incorrect statements in regard to the nonexistent or unrecorded deed of trust. It contained an incorrect Harris County deed of trust file number. There was evidence before the jury that Attorney Harris was aware that the deed of trust pertaining to the $36,025.00 note was not in the papers furnished to him to attempt to collect on the note. There was evidence in the record that Attorney Harris was negligent and breached his duty to the Boatrights. The trial court should not have granted Attorney Harris' Motion for Judgment N.O.V.

■ The trial court should have entered judgment for the Boatrights against Texas American and Attorney Harris since there was sufficient evidence to support the jury's findings as to negligence and damages. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 933 (Tex.1983). The punitive damage award was not excessive and was justified under the facts. Such damages may be awarded to punish a wrongdoer, to reimburse a party who has sustained losses which are too remote to include as actual damages and to compensate a party for the inconvenience suffered and expenses incurred as a result of the acts of the negligent party. *Hofer v. Lavender,* 679 S.W.2d 470 (Tex.1984).

Point of Error No. Four is sustained.

### CONCLUSION

■ The case went to the jury only on the basis of negligence of Texas American, Attorney Harold F. Harris and the Boatrights. Therefore, attorney's fees improperly submitted are not recoverable. However, prejudgment interest is recoverable since it was pled but only as to the actual damages awarded. *Cavnar v. Quality Control Parking Inc.,* 696 S.W.2d 549 (Tex.1985).

We reverse the judgment of the trial court and render judgment for Philip and Linda Boatright against Texas American Title Company and Harold F. Harris, jointly and severally, in the amount of $55,-000.00; such amount shall bear prejudgment interest at the rate of ten percent from August 22, 1985, until May 15, 1989; thereafter the total amount shall continue to bear interest at the rate of ten percent until paid.

In addition, judgment is granted to Philip and Linda Boatright against Texas American Title Company in the amount of $32,-000.00 which shall bear interest from May

15, 1989, at the rate of ten percent until paid.