**W. H. HUDSON, Appellant,**

v.

**Ted HINTON, Appellee.**

No. 17182.

Court of Civil Appeals of Texas.

Dallas.

Dec. 6, 1968.

Howard V. Tygrett, Jr., of Parnass & McGuire, Irving, for appellant.

Jerry C. Gilmore, of Green, Gilmore, Chrisman & Rothpletz, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

This is an appeal from a summary judgment denying appellant recovery against appellee in an action based upon a written contract of indemnity. Appellee defended, inter alia, on the ground that the agreement was to insure against liability only, and since such liability had accrued more than four years prior to the institution of suit, appellant's claim was barred by the provisions of Art. 5527, Vernon's Ann.Civ.St. of Texas. Motions for summary judgment were filed by both parties and the court sustained that of appellee and overruled the one filed by appellant. The primary ques-

tion presented is whether the trial court was correct in holding that the statute of limitations effectively barred appellant's cause of action.

A resolution of the question requires a careful analysis of the facts revealed in the summary judgment evidence presented by both parties. Appellant W. H. Hudson and appellee Ted Hinton had been engaged in certain business dealings with one another in a corporation known as Dallas Grain Storage Company. On October 12, 1961 Hinton agreed to sell to Hudson 10,000 shares of common stock in the company, in consideration of the sum of $50,095. The sales transaction was evidenced by a written agreement in the form of a letter, signed by both parties, and dated October 12, 1961. The material paragraph of such letter is as follows:

"I hereby agree to indemnify you and hold you harmless to the extent of one-fourth (¼) of any liabilities of the Company not set forth in the financial statements attached hereto marked Exhibit 'A', including any deficiencies for Federal income taxes which may be imposed or assessed against the Company with respect to its operations prior to the date hereof, and including any liability for grain shrinkage pursuant to the said contract with the Diversified Products Corporation. As security for my performance of this indemnification, on the Closing Date you shall be entitled to withhold from the proceeds due me the sum of $5,000.00, which you shall deposit with the Escrow Agent to hold for a period of one year from the Closing Date, or until all liabilities indemnified against are earlier discharged in accordance with an escrow agreement to be executed with the Escrow Agent."

In his affidavit in support of his motion Hudson said that the Internal Revenue Service of the United States of America audited the income tax returns of the Dallas Grain Storage Company for the taxable years of the corporation ending December 31, 1960, and ending December 31, 1961, and "proposed a tax deficiency" for the year 1960 in the amount of $19,929.36 and "proposed a tax deficiency" for the year 1961 in the amount of $2,279.30. * He related that he contested both proposed deficiencies, and at his sole expense diligently prosecuted said contest through audit and with the appellate division of the Internal Revenue Service, which resulted in a total income tax deficiency of $30,516.85 being adjudged against Dallas Grain Storage Company. In a supplemental affidavit Hudson attached true copies of the "actual assessments" from the Internal Revenue Service for Dallas Grain Storage Company, one being in the sum of $3,050.73 as tax for 1961 and the other for $27,479.39 for tax for 1960. Both of these instruments bear two dates, one October 23, 1967 and the other November 21, 1967. Both forms contain a statement that the account is delinquent and should be paid promptly to prevent enforcement action to collect same. The 1960 tax form shows a credit of $10,000, which Hudson says he paid by check dated October 16, 1967. Hudson testified that he paid the sum of $20,-516.85 by check dated November 6, 1967. Hudson further states that in October 1967 the Internal Revenue Service made demand for the full amount of the liability of the Dallas Grain Storage Company and that on October 9, 1967 he made written demand upon Hinton that Hinton pay his pro rata part of such income tax liability which is the sum of $7,629.21. Hudson said that Hinton ignored such demand and that he, Hudson, was required to pay the entire amount.

Hinton does not counter the facts as set forth in Hudson's affidavit. However, in his affidavit in answer to Hudson's motion for summary judgment Hinton said that he agreed to participate in the payment of any "contingent Federal Taxes" which

---

* The record is silent as to the dates when the Internal Revenue Service made the audits or proposed the tax deficiencies.

might have been due by said corporation and agreed to deposit the sum of $5,000 with an escrow agent for one year to secure said promise. He said that, through no fault of his own, but rather through the "dilatory and purposeful retarding action" of the plaintiff and movant (Hudson), the contingent liability, if any there existed, was not "determined" for more than six years after the agreement contained in plaintiff's original petition and that, by reason of such delay, Hinton was denied any opportunity to participate in any such litigation or to have the opportunity to mitigate his damages.

Appellee argues that pursuant to the plain and express terms of the written indemnity agreement Hinton, as indemnitor, agreed to indemnify Hudson, as indemnitee, against liability rather than against the actual payment of the tax assessment. This being true, appellee contends that the cause of action accrued at the time the Internal Revenue Department made its determination of the tax deficiency which Hinton designates as "contingent liability." It follows, says appellee, that the suit being filed in January 1968, more than four years following the time of accrual of liability, the cause of action is barred by the statute in question. Appellant, on the other hand, forcefully argues that the indemnity agreement between the parties should be construed so as to reflect the intention of the parties to be that the contract of indemnity was to become effective when liability for the tax deficiency was finally determined, and since the assessment and demand for payment fell within the four-year period prior to suit the statute was inapplicable. Both parties rely upon the case of Russell v. Lemons, 205 S.W.2d 629 (Tex.Civ.App., Amarillo 1947, writ ref'd n. r. e.), which points out the well-defined distinction between an obligation to indemnify the indemnitee against the rendition of a judgment or the accrual of a liability and one to indemnify him against the consequences of any damages or injuries that might be suffered by him by virtue thereof. Since

both parties seem to be in agreement that the indemnity agreement indemnifies Hudson against liability the chief question is when did the liability accrue.

 There being no contention of ambiguity, the answer to the question should be found by determining the intention of the parties as evidenced by the language used by them in the indemnity agreement. Of course, it is a cardinal rule governing the construction of indemnity agreements that the indemnitor is entitled to have his undertaking strictly construed, and that it cannot be extended by construction or implication beyond its plain terms. 30 Tex. Jur.2d, Indemnity, § 7, p. 450. However, it is expressly pointed out by our Supreme Court that the doctrine of *strictissimi juris* is not a rule of construction to be used in the determination of intent in a contract of indemnity. The words of the contract are to be construed by the application of ordinary rules of construction and it is only after the intent has been determined that the doctrine of *strictissimi juris* is applicable to prevent the liability under the contract from being extended beyond the terms of the agreement. Ohio Oil Co. v. Smith, 365 S.W.2d 621 (Tex.Sup.1963).

 We turn now to an examination of the words of the contract in question in an effort to determine the intent of the parties. In doing so we apply the general rule of law that words and phrases used in the contract will be accorded their ordinary, popular, and commonly accepted meaning. By the agreement Hinton said: "I hearby agree to indemnify you [Hudson] and hold you harmless to the extent of one-fourth (¼) of any *liabilities* of the Company * * *, including any deficiencies for Federal income taxes which may be *imposed or assessed* against the Company * * *, and including any *liability* for grain shrinkage * * *." Further, Hinton agreed to deposit the sum of $5,000 with escrow agent to "hold for a period of one year from the Closing Date, or until *all liabilities* indemnified against are earlier

discharged, \* \* \*." (Emphasis supplied.) To the average layman the word "assess" means "To determine and impose a tax or fine upon a person." The word "impose" means "To subject one to a charge, penalty, or the like. \* \* \* To lay as a charge, burden, tax, duty, obligation, \* \* \* penalty, etc.; to enjoin; levy; inflict \* \* \*." The word "liability" means "A debt; an amount which is owed \* \* \*." "Contingent liability" is said to be an amount "resulting from past transactions which may become a liability in the future under certain defined circumstances." Webster's New International Dictionary, 2d Edition.

■ When these words are considered in the light of the construction to be placed upon this agreement, especially when we also consider the words "contingent liability" as used by Hinton in his affidavit, and the words "proposed liability" as used by Hudson in his affidavit, it is quite evident that both parties intended that the first computation of taxes to be due would not constitute the final declaration of liability which either must be paid or the taxpayer suffer the consequences therefor. The fact that Hinton agreed to deposit the sum of $5,000 to be held in escrow for one year from closing date or "until all liabilities indemnified against are earlier discharged" indicates the intent of the parties that there would probably be a period of time when the amount of tax liability would be in dispute. It is also reasonable to say that the parties intended to be governed by the applicable federal law relating to the assessment and collection of taxes and tax deficiencies.

Section 6201, Title 26, United States Code Annotated, delegates to the Secretary of the Treasury, or his delegate, authorization to make the inquiries, determinations, and assessments of all taxes imposed by the title. Section 6202 of the same title provides for the mode or time for the assessment, and Section 6203 provides that the assessment shall be made by recording the liability of the taxpayer in the office of the Secretary, or his delegate. In the case of a tax deficiency Section 6211, Title 26, U.S.C.A., provides for the computation thereof by the Secretary or his delegate; Section 6212 provides for notice of deficiency after determination that there is a deficiency; and Section 6213 provides that within ninety days after notice of deficiency the taxpayer may file a petition with the tax court for a redetermination of the deficiency. Sections 6303 and 6331, Title 26, U.S.C.A., provide for the levy and collection of taxes after demand made upon the assessment.

■ The federal courts have held that an "assessment" of a tax is an administrative determination that one is indebted to the government for taxes and is in effect a judgment for taxes found due. Cohen v. Gross, 316 F.2d 521 (Cir.Ct.App., New Jersey 1963); Pipola v. Chicago, 169 F.Supp. 229 (1959), modified on other grounds, 2 Cir., 274 F.2d 909. The court in *Pipola,* supra, quoted the United States Supreme Court in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), saying:

"The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt."

■ It is clear to us from the foregoing construction to be given indemnity agreements, and the applicable federal authorities, that liability for the tax deficiency for the corporation was not fixed by the government until October 1967. At that time the assessment contemplated by the federal statutes cited above was made and the amount of the tax deficiency finally adjudicated. This, according to the federal cases, had the same effect as the rendition of a judgment. Such being true, the "potential liability" referred to by appellee Hinton in his affidavit ripened into actual liability in October 1967. The suit being filed in January 1968, it was not proscribed

by the statute of limitations invoked by appellee. Accordingly, we sustain appellant's point 2.

■ Appellant also, in appropriate points, contends that the trial court erred in overruling his motion for summary judgment because the pleadings and affidavits on file demonstrated no genuine issue of any material facts and therefore appellant was entitled to judgment as a matter of law. We cannot agree with appellant and therefore overrule his contention. Appellee Hinton, in response to Hudson's suit on the indemnity agreement, not only pled the statute of limitations, heretofore discussed, but also affirmatively pled that he was entitled to an offset over and against any amount of money which he at any time might have owed Hudson by reason of mismanagement of the affairs of the corporation and by failure of the plaintiff to pay defendant the sum of $1,000 a month for twelve months while the corporation was in existence. In his supporting affidavit Hinton states that Hudson agreed to pay him a salary for management of the corporation in the sum of $1,000 per month, which Hudson failed to pay for a period in excess of twelve months so that he was therefore entitled to offset in the sum of $12,000 on any amount which might have been found due under the indemnity agreement. Hinton also stated that Hudson mismanaged the affairs of the corporation through the purchase of an unsuccessful shopping center and in the participation of construction of a polo field, neither of which were in the proper scope and function of the corporation. He alleged that he was entitled to offset proportionate share of damages caused by such mismanagement. Hudson, in counter affidavit, merely stated generally that "no credit and no offsets are due to Ted Hinton." We think these affidavits, while obviously containing some conclusions and opinions, do relate sufficient facts so as to present issues of fact and therefore the trial court was correct in overruling appellant's motion for summary judgment.

We have tested this case in the light of the established rules concerning judicial review of summary judgment actions as laid down by our Supreme Court in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (Tex. Sup.1965), and having done so we conclude, and so hold, that the judgment of the trial court must be reversed.

Reversed and remanded.