The STATE of Texas, Appellant,

v.

Mark R. SZELA, James Blevins, Richard Wayne Mullins, John R. Dean, Jimmy Dale Cobble, Bryan Keith Rudd, Thomas James Edwards, Rene Longoria, and James Ray Blevins, Appellees.

Nos. 13–91–290–CR to 13–91–298–CR

Court of Appeals of Texas, Corpus Christi.

Nov. 27, 1991.

Rehearing Overruled Dec. 30, 1991.

Mark R. Kelly, Crim. Dist. Atty., Phillip Poplin, Sp. Asst. Dist. Atty., John D. Whitlow, Dist. Atty., Port Lavaca, for appellant.

Charles Hood, Hernandez & Hood, Port Lavaca, for appellees.

Before KENNEDY, DORSEY and HINOJOSA, JJ.

## OPINION

KENNEDY, Justice.

The State charged the above appellees with taking oysters from polluted waters, a violation of Tex. Parks & Wild. Code Ann. § 76.116(a) (Vernon 1991). Five of the appellees filed motions to quash, alleging, *inter alia*, that certain sections of the Tex-

as Parks and Wildlife Code and the Texas Health and Safety Code were unconstitutional.[1] After hearing evidence, the trial court agreed and dismissed the charges. We find the sections constitutional and reverse and remand the causes to the trial court.

The Texas Health and Safety Code authorizes the State Commissioner of Health to declare areas of the State's waters "polluted" and to close them to shellfish harvesting. Tex. Health & Safety Code Ann. § 436.012(a)–(b) (Vernon Pamp.1991). The Texas Parks and Wildlife Code authorizes the State to enforce the Health Commissioner's declaration by prosecuting anyone who takes oysters from a polluted area. Tex. Parks & Wild. Code § 76.116.

The Health Commissioner declared certain portions of San Antonio and Espiritu Santo Bays polluted and described the closed areas as:

That area west, north and east of a line drawn in a northerly direction from McDowell Point to Cities Service Well # 3 (located approximately one half (½) mile south southeast of Grassy Point). Thence in an easterly direction from Cities Service Well # 3 to Energy Development Corp # 1 to Channel Marker # 28, then in a south southeasterly direction from Channel Marker # 28 along the Victoria Channel to the platform near Marker # 24, then in a northeasterly direction to Swan Point to the end of the last pier of the south most house.

That area of Matagorda Bay 500 yards offshore from the southern tip of Boggy Bayou parallel to the shoreline around Port O'Connor to the Intracoastal Waterway.

All area within a 50 yard radius of recreational cabins located on the bay.

Also all residential subdivision channels and harbor areas up to a radius of 300 yard (sic) offshore from the shoreline where the channels become land bound.

A map of San Antonio and Espiritu Santo Bays accompanied the order. The map marks the polluted, conditionally approved, and approved areas of the bays.

In the motion to quash, appellees alleged that the Health and Safety Code and the Parks and Wildlife Code were unconstitutional in that they denied appellees due process because the sections underlying their prosecutions were void for vagueness. Appellees attacked Health & Safety Code § 436.012, which provides:

(a) The commissioner [of health] by order shall declare to be polluted any area within the jurisdiction of the state that the commissioner finds is a polluted area.

(b) The commissioner shall close to the taking of shellfish for the period the commissioner considers advisable any water to which shellfish from a polluted area may have been transferred.

(c) The commissioner shall modify or revoke an order in accordance with the results of sanitary and bacteriological surveys conducted by the department. The commissioner shall file the order in the department's office and shall furnish without charge a copy of the order describing polluted areas to any interested person.

(d) The commissioner shall conspicuously outline polluted areas on maps and shall furnish the maps without charge to any interested person. The failure of a person to avail himself of that information does not relieve that person from liability under this subchapter.

Appellees also attacked Parks and Wildlife Code § 76.116, which provides:

(a) There is no open season for taking oysters from areas declared to be polluted by the State Department of Health, and a person who takes oysters from such an area violates Section 76.108(a) of this Code.

(b) The department may authorize by permit the transplanting of oysters from polluted areas to private oyster leases.

---

1. The appellate records do not show that motions to quash were filed by Szela, Mullins, Dean, or Longoria. Nonetheless, the trial court ordered these prosecutions dismissed. The State does not complain about the lack of motions in these cases, so we presume that the order properly applies to all cases on appeal.

(c) A person removing oysters from polluted areas without a permit shall replace the oysters in the beds from which they were taken as directed by authorized employees of the department.

The sole witness at the hearing on the motion was Jeffery Wildes, the Classification Survey Branch Chief of the Texas Department of Health, Division of Shellfish Sanitation Control. Wildes testified about procedures the Department of Health uses to declare an area polluted and how those areas are marked on maps available to the public. None of the defendants testified. After this hearing, the trial court concluded that Health & Safety Code § 436.012(d) and Parks and Wildlife Code § 76.116 were unconstitutional for "a number of reasons." The trial court granted appellees' motion and dismissed the informations in a written order which reads, in part, as follows:

1) All of the public waters of the State of Texas are presumed to be open for the purpose of harvesting shellfish. Sec. 436.101(d) (supra) provides in part, "The failure of a person to avail himself of that information does not relieve that person from liability under this subchapter." The State cannot shift the burden of proof in criminal nor civil administrative proceedings. The effect of this Statute would be to require the defendant in a proceeding concerning the same to show he or she was in an open area, when the obvious burden of proof is on the State to prove the defendant was oystering in a closed area. Consequently, this Statute is unconstitutional.

2) Sec. 436.012(d) (supra) provides that maps shall be provided by the Commissioner of Health designating so-called polluted areas. Maps, in and of themselves, do not constitute adequate notice, unless they use boundary lines that are so commonly known to the public that they are obvious, boundary lines such as the boundaries between counties, north and south of a bridge or, for instance, the Intercoastal Canal. The maps provided by the Commissioner of Health have no means by which the lines can be surveyed. They have no latitudes nor longitudes nor north and south references. If a map is sufficient, the lines must be as accurate as those required in deeds. If the State is going to use the concept that on one side of a line an activity is legal and on the other side of the line that same activity is illegal, then, the line must be "bright" and must be ascertainable with certainty. It cannot be approximate. It's foolish to assume the general public will recognize the difference between safe and unsafe areas outlined on maps that are not issued with their licenses nor statutorily required to be distributed to the holder of every license. Maps without certain lines with the accuracy of deeds are unconstitutionally vague and can never serve notice on the public which can be the basis for upholding convictions of our penal laws. The maps prepared by the Commissioner of Health have clear straight lines, but the general public has no certain way to locate the line on the water.

3) These cases in question involve San Antonio Bay and two smaller bays, Hynes and Guadalupe. Not only are maps without bright lines unconstitutional, the lines as attempted to be designated on the ground or in the water are unconstitutionally vague. The maps refer to points that are miles apart. A person on San Antonio Bay can never clearly see the designated landmarks on hazy days, in the fog, the rain, the early morning and late afternoon. Also, one of the reference points is McDowell Point, which is supposed to be located on the western shore of San Antonio Bay. Anyone looking southwesterly at the general location of McDowell's Point from a distance of several miles can only see a shoreline. If a point exists, the third dimensional aspect and view looking in that direction from that distance is lost. McDowell's Point is not a point of legal reference. In addition, the wells and channel markers selected are miles apart and only those people with considerable experience on the bay can determine one from the other. Consequently, not only are maps vague, but also the landmarks and their locations are vague.

In these modern times, with PVC pipe and buoys available, it's an extraordinarily small price to pay, on the part of the State, to provide adequate notice to individuals on the water by marking and outlining legal and illegal areas and, more important, protecting the public from possibly contaminated oysters entering the food chain. If our public health is of any real concern to the State, the lines must be clearly marked, the same as those markers required of high pressure gas lines and the warnings on poisons. Even cigarettes are more clearly marked than our bays. Time after time, alleged violators have suggested to this Court they "simply didn't realize the area was closed". This condition cannot continue to exist. If we are to continue to sell Texas oysters nationwide, the State of Texas must mark the bays so the average person will not harvest oysters that may be contaminated. For this reason 436.012 (supra) and 76.116 (supra) are both unconstitutional.

From this order, the State appealed. In point of error one, subpoint A, the State contends the trial court erred in holding that the public waters of Texas are presumed to be open for the purpose of shellfish harvesting. The Parks and Wildlife Code states that public beds and reefs are open to the taking of oysters during a portion of the year. Tex. Parks & Wild. Code Ann. § 76.108 (Vernon 1991). "Open areas" may be closed, however, if the Parks and Wildlife Commission finds that an area is overworked, damaged, or needs to be reseeded or stocked. Tex. Parks & Wild. Code Ann. § 76.115 (Vernon 1991). In addition, an area is not "open" if it has been declared polluted by the Department of Health. Tex. Parks & Wild. Code § 76.116(a).

The Code is worded to make areas "open" unless declared polluted or "closed" for other reasons. Accordingly, we agree with the trial court that Texas waters are generally "open" to the taking of oysters during the calendar months permitted by the Parks and Wildlife Code. We overrule subpoint A.

In subpoint B, the State contends that the trial court erred in holding that § 436.012(d) impermissibly shifts the burden of proof to the defendant. We do not find that subsection (d) shifts the burden of proof to a defendant. The statute places a burden upon one who seeks to take oysters to determine whether an area is open or closed, a burden akin to that placed upon the same person to determine whether the season is open or closed.[2] This burden is not the "burden of proof" which falls upon the State in a criminal prosecution. The State is still required to show in a prosecution that a defendant was taking oysters from a closed area. The statute does not shift to the defendant the burden of showing that he was oystering in an open area. Point of error one, subpoint B, is sustained.

In its second point of error, the State argues that the trial court erred in holding § 436.012 and § 76.116 unconstitutional as void for vagueness. In their pretrial attack on the charging instruments, appellees alleged that the two statutes were facially unconstitutional. A facial challenge to a legislative act is the most difficult because the challenger must establish that no set of circumstances exists under which the act would be valid. *Briggs v. State*, 789 S.W.2d 918, 923 (Tex. Crim.App.1990). A challenge which alleges that a statute is unconstitutionally vague will be upheld only if the statute is impermissibly vague in all of its applications. *Briggs v. State*, 740 S.W.2d 803, 806 (Tex. Crim.App.1987). One to whose conduct a statute clearly applies may not successfully challenge it for vagueness. *Id.*

A statute is vague when persons of common intelligence must necessarily guess at its meaning and differ about its application. *See Cotton v. State*, 686 S.W.2d 140, 141 (Tex.Crim.App.1985). As a fundamental proposition, all criminal laws must give notice to the populace and law

**2.** In *Williams v. State*, 176 S.W.2d 177, 184 (Tex. Crim.App.1943), the Court held that the defendant, prosecuted under the Pink Bollworm Act, had the burden to determine whether his land was subject to restrictions placed upon it through the Pink Bollworm Commission.

enforcement personnel of what activity is criminal. *Bynum v. State,* 767 S.W.2d 769, 773 (Tex.Crim.App.1989). A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminating applications. *See Bynum,* 767 S.W.2d at 773–75.

■ Appellees did not establish the facts of the instant prosecutions. All they showed is that they were charged with taking oysters from the waters described in the informations. Accordingly, we review only the statutes which authorize the Health Commissioner to declare waters polluted and the Parks and Wildlife Code, which prohibits the taking of oysters from those waters. We cannot review the application of those statutes to the individual appellees because no evidence was introduced showing where appellees took the oysters or under what circumstances.

Reviewing the statutes on their face, we do not find them vague. One statute permits the Health Commissioner to declare areas polluted. He is then required to make maps of the area and to furnish those maps to interested individuals. The other statute prohibits the taking of oysters from these waters. On their face, these statutes provide notice of the forbidden conduct in terms which persons of common intelligence can reasonably understand. *See McCarty v. State,* 616 S.W.2d 194, 195–196 (Tex.Crim.App.1981).

■ If we extend our consideration under this point to include a review of the maps and verbal description of the closed area as contained in the Health Commissioner's order, we find that adequate notice was given to the public of the areas which were closed. The maps are available to the public, and the order describes the closed area by referring to certain geographical points and physical structures which correlate to points on the map. Although the map and order do not describe these points in terms that would be used in deeds, they adequately mark the closed area. Point two is sustained.

■ In its third point of error, the State contends that the trial court erred in

basing its finding of vagueness on hypothetical applications. We agree. A defendant must show that a statute in its operation to him in his situation is unconstitutional; that it may be unconstitutional to others is not sufficient. *Briggs,* 740 S.W.2d at 806. The trial court's order could not have been based on the statutes' application to the individuals charged, as none of the appellees testified or presented any evidence to show their particular situation. Appellees did not negate the possibility that they took oysters from areas well behind the closure line and from any area which could not reasonably be confused as an open area. In short, appellees have not shown how the facts of their cases interact with these statutes. The State's third point of error is sustained.

■ In point four, the State alleges that the trial court erred in declaring that only specific types of maps and markers are constitutional. The trial court's order dismissing the prosecutions is based, in part, on the premise that the Health Department's use of wellheads, geographical points, and non-legal descriptions fail to provide sufficient notice of what areas are closed and thereby make application of the underlying statutes unconstitutional. As above, appellees introduced no evidence to show that the identifying points the Commission used were insufficient to notify the individual appellees which area was closed. We find no statutory or constitutional requirement that the identifying points or lines must be referenced by latitudes, longitudes, or descriptions such as those used in deeds. *See Tuttle v. Wood,* 35 S.W.2d 1061, 1065 (Tex.Civ.App.—San Antonio 1930, writ refused). The State's fourth point is sustained.

We find that the statutes challenged by the appellees are not facially unconstitutional. The trial court erred in so holding. Accordingly, the order of the trial court quashing the informations is reversed, and the causes are remanded to the trial court.