**T.C. TUBB, Appellant,**

v.

**Sheryl Ann BARTLETT, Independent Executrix of the Estate of James H. Bartlett, Deceased, Appellee.**

No. 08–92–00326–CV.

Court of Appeals of Texas, El Paso.

Sept. 8, 1993.

Rehearing Denied Oct. 6, 1993.

Robert R. Truitt, Jr., Midland, for appellant.

C.H. Hal Brockett, Jr., Brockett & Lindemood, Midland, for appellee.

Before OSBORN, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

In a declaratory judgment action concerning the parties' rights and obligations arising out of two indemnity agreements, the jury found that although the parties had mutually agreed to rescind the first handwritten agreement, the rescission was conditioned on the execution of a second similar indemnity agreement which added a third party as an indemnitor. From a judgment on the verdict which among other things awarded the Appellee damages of $18,881 and attorney's fees of $12,811, found the handwritten agreement to be valid and required Appellant to indemnify Appellee's decedent against all debts, obligations, claims, and demands arising out of a certain venture, he brings this appeal claiming in twenty-one points that the trial court erred in denying his motion for *judgment non obstante veredicto,* in denying his motion to disregard a jury finding, and in denying his motion for new trial.

### RELEVANT FACTS

In 1988, T.C. Tubb (Tubb) made a series of loans to West Texas Career Institute, Inc., a proprietary trade school in Midland, Texas and/or to James H. Bartlett, deceased (Bartlett), for the purpose of financing the school.[1, 2] The school encountered difficulties and in October 1988, Bartlett was removed from its control.

Following his removal, Bartlett filed suit against Tubb and others, for conversion, tortious interference of contract, breach of the duty of good faith and fair dealing, and unfair collection practices. All claims, future and present, arising out of this suit were settled among the named parties, the settlement being memorialized in an agreement signed by Bartlett and Tubb on July 29, 1989 that detailed the specific terms of the settlement including Tubb's obligation to pay Bartlett $75,000 in exchange for a general release from Bartlett. At the same time this agreement was executed by Bartlett and Tubb, Bartlett insisted upon another agreement, which he dictated and Tubb handwrote and both signed, in which Tubb agreed to indemnify Bartlett from any obligations, debts, claims, and demands arising out of his previous association with Big Horn Energy, OTEC, and their subsidiaries that might be made against him, and Bartlett agreed to work with OTEC to keep from having any adverse effect on the operation of the school.[3] Shortly thereafter, apparently on the same or next day,[4] Tubb decided that any such indemnity agreement needed to include Bill Just, the then owner of West Texas Career Institute.[5] At Tubb's request, another

---

1. Bartlett was a majority shareholder of Big Horn Energy, Inc. Big Horn initially owned all of the issued and outstanding stock of West Texas Career Institute. OTEC was another trade school operating in Oklahoma City, Oklahoma, owned originally by Bill Just, which became involved in the operation and eventually in the ownership of West Texas Career Institute.

2. In his testimony, Tubb claimed that he had made numerous loans to the school or Bartlett in varying amounts totaling approximately $183,400 from February 1988 to October 1988.

3. The handwritten agreement is as follows:

> July 29, 1989
> Midland, Texas
>
> Re: Agreement between
> Jim Barlett and T.C. Tubb

I agree to Indemnify Jim Bartlet [sic] from all debts, and obligations, clams [sic] & demands arising out of Big Horn energy, Otec. and its subsibiaries [sic].

Jim Bartlett agrees to work with Otec. in a maner [sic] not to cause any determental [sic] efect [sic] on the school's operation.

> s/J.H. Bartlett
> s/T.C. Tubb

4. Although dated July 29, 1989, the typewritten agreement was signed on the next day, July 30, according to Bartlett. Tubb claims it was signed July 29.

5. Bill Just was the owner of OTEC, an Oklahoma based corporation that ran two other trade schools. OTEC eventually bought West Texas Career Institute to help with the school's accreditation.

agreement, essentially duplicating the terms of the handwritten agreement but adding Bill Just as an indemnitor, was typed in Tubb's office and signed by Bartlett and Tubb but never by Just who apparently refused to sign.[6]

During the same time period in which the agreements were signed, Bartlett was named a party defendant along with others in various suits arising out of his prior associations with Big Horn and OTEC (West Texas Career Institute). At least two of the suits were filed prior to the signing of the agreements and according to Bartlett, were brought to Tubb's attention and discussed with him before the agreements were drafted and signed. Bartlett, subsequent to the signing of the indemnity agreements, sought indemnification from Tubb for the amounts claimed in these suits, which the latter refused to honor.

In January 1990, Bartlett filed this suit for declaratory judgment and indemnity, seeking a determination of the parties' rights and obligations arising out of the two indemnity agreements and a judgment for costs and expenses incurred in defense of claims made against him and for attorney's fees. The case was tried to a jury which found in answer to Question No. 1 that the parties had mutually agreed to rescind the July 29, 1989 handwritten indemnity agreement and discharge each other from the contractual obligations arising thereunder. The jury further found in response to Question No. 2 that the rescission of the handwritten agreement was conditioned on the execution of a similar agreement adding Bill Just as a party. It was not required to answer the third and final question which inquired as to whether the parties agreed at the time the second agreement was signed that it was not to

become binding unless and until it was signed by Just. The trial court denied Tubb's motions to disregard the finding on Question No. 2 and to enter judgment on the finding on Question No. 1 and for *judgment non obstante veredicto* (JNOV) and instead entered judgment on the verdict, declaring the handwritten indemnity agreement to be valid and awarding Bartlett his damages and attorney's fees.

### JUDGMENT NON OBSTANTE VEREDICTO

In his Points of Error Nos. One, Two, Seven, Eight, and Nine, Tubb asserts trial court error in denying his JNOV motion because the finding in response to Question No. 1 conclusively established that the parties had rescinded the handwritten agreement, that there was no evidence to establish a binding indemnity agreement, that the judgment failed to include a set-off in favor of Tubb in the amount of $218,400, that Tubb established that Bartlett had failed to satisfy a condition precedent to any recovery under the handwritten indemnity agreement, and that the handwritten indemnity agreement was ambiguous and therefore unenforceable.

### STANDARD OF REVIEW

When the trial court's denial of a motion for JNOV is challenged, we must determine whether there is any evidence more than a scintilla to support the findings of the jury because the trial court may disregard a jury finding and grant a JNOV only if there is no evidence from which the jury could have made its findings. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 728 (Tex.1982); *Baker v. International Record Syndicate*, 812 S.W.2d 53, 56 (Tex.App.—Dallas 1991, no writ). Furthermore, the evi-

---

6. The typewritten indemnity agreement reads as follows:
July 29, 1989
Midland, Texas
Agreement between JIM BARTLETT, T.C. Tubb, and BILL JUST
T.C. TUBB and BILL JUST agree to indemnify JIM BARTLETT against all debts and obligations, claims and demands, arising out of BIG HORN ENERGY, OTEC, INC. and its subsidiaries, that are related to the operation and maintenance of the above-mentioned business.

JIM BARTLETT agrees to work with the management of OTEC, INC., to protect and not cause any detrimental effects on the schools' operation and its future.
/s/ J.H. Bartlett
J.H. BARTLETT

BILL JUST
/s/ T.C. Tubb
T.C. TUBB

dence must be reviewed in a light most favorable to the jury finding, considering only the evidence and inferences tending to support the jury finding. *Dowling,* 631 S.W.2d at 728; *Baker,* 812 S.W.2d at 56; *Boatright v. Texas American Title Co.,* 790 S.W.2d 722, 728 (Tex.App.—El Paso 1990, writ dism'd), *citing Dodd v. Texas Farm Products Company,* 576 S.W.2d 812 (Tex.1979). If there is any competent evidence to support the jury's finding, the court may not disregard that finding and grant a JNOV. *Boatright,* 790 S.W.2d at 728.

Before analyzing the record to determine if there is any competent evidence more than a scintilla to support the jury's finding in answer to Question No. 2 that the rescission of the handwritten agreement was conditioned upon the execution of the second agreement by Just, we note that Tubb voiced no objection to the manner in which the charge was submitted with the second question to be answered only if the jury answered "yes" to the first question.[7]

Bartlett testified that he would not have signed the settlement agreement and accepted the $75,000 payment without an indemnity agreement because it would have left him exposed to a liability of $300,000 for guarantees he had made while in control of Big Horn Energy and West Texas Career Institute. It was Bartlett's testimony that when Tubb asked him to sign the second indemnity agreement, he explained that it had nothing to do with the first agreement but that he just wanted to add Just's name as an indemnitor so that it would make him liable for the indebtedness along with Tubb. Bartlett testified that he told Tubb he could care less whether Just was added since the agreement was between Tubb and himself. Significantly, Bartlett testified that the typewritten agreement that he signed had nothing to do with the handwritten agreement, it was simply for Tubb's benefit so that Tubb could have Just assume some of the liability. Bartlett testified that Tubb never conditioned the validity of either agreement on

Just's inclusion. Although Tubb contends that it was discussed and understood between Bartlett and himself that the handwritten agreement was rescinded by the second agreement and that the check was only good if Just signed the second agreement, he agreed in his testimony that Bartlett told him he really didn't care ("I don't care, really, it doesn't make any difference") if Just was added to the indemnity agreement. Tubb's account of his conversation with Bartlett is consistent with the latter's except that Bartlett's version could be interpreted as an understanding between the parties that "no matter who is added to the Indemnity Agreement we still have an agreement between ourselves."

■ Moreover, at the time the second agreement was prepared, Tubb took the handwritten agreement, but not the $75,000 check, from Bartlett and had the second agreement typed from it, which materially differed from the handwritten agreement only in respect that the second agreement added Just's name as an indemnitor. The handwritten agreement was apparently returned to Bartlett since it was in his possession at the time his deposition was taken. This gives rise to an inference that the parties did not intend an unconditional rescission of the handwritten agreement by their execution of the second agreement, else the handwritten agreement would have been destroyed or at least not returned to Bartlett.

We hold that the evidence summarized above amply supports the jury's finding that the rescission of the handwritten agreement as found in answer to the first question was conditioned upon the second agreement being signed by Bill Just. While the evidence is conflicting, it certainly does not show that as a matter of law, the parties mutually assented to a rescission of the handwritten agreement. Points of Error Nos. One and Two are overruled.

In Point of Error No. Seven, Tubb contends he was entitled to a set-off in the final

---

7. Bartlett, on the other hand, objected to the charge as given, contending that there was no evidence to support the submission of any of the questions and that he was entitled to an instructed verdict. Tubb's only objection to the charge was with the court's refusal to submit a tendered question inquiring as to whether Bartlett had fully performed his obligations under the indemnity agreement (which of the two not being specified).

judgment in the amount of $218,400 against any monies owed to Bartlett and it was thus error for the trial court to deny his motion for JNOV. We don't understand this point as it might relate to a denied motion for JNOV but recognize that it was properly raised as a ground in Tubb's motion for new trial.

■ Although Tubb pled generally for set-off of monies owed to him by Bartlett,[8] his proof fell far short of establishing as a matter of law that Bartlett owed him any monies. Under cross-examination, he admitted that of the twelve checks which added up to $218,400 only two totalling $1,833.38 were made payable to Bartlett himself. All of the others were made payable to either West Texas Career Institute or OTEC on loans arranged by Mac Dalton, an accountant and part owner of OTEC, who deposited the checks in the corporate accounts. The evidence shows that all of the loans in question were made prior to October 1988 when Bartlett was forced out of the school operation and well prior to the settlement of the damage suit brought by Bartlett against Tubb and others over his removal. Finally, Tubb neither made a proper request for the submission of a jury question on set-off nor objected to the absence of a set-off question. Since his entitlement to any set-off against Bartlett was not conclusively established, the defensive issue of set-off was waived by Tubb's failure to submit a question and to object to the charge as given. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex.1991); *Pope v. Darcey*, 667 S.W.2d 270, 274 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); TEX.R.CIV.P. 273, 274, 279; TEX. R.APP.P. 52(a). Point of Error No. Seven is overruled.

### CONDITION PRECEDENT

■ In his eighth and ninth points of error, Tubb asserts that it was error for the court not to grant his motion JNOV because, as a matter of law, Bartlett "failed to satisfy a condition precedent to any recovery under the [handwritten agreement]" which required him to work with the management of OTEC in a manner not to cause any detrimental effect on the school's operation.

■ His assertions in this regard are based on one sentence in the handwritten agreement: "Jim Bartlett agrees to work with Otec. in a maner [sic] not to cause any determental [sic] efect [sic] on the school's operation." Conditions precedent to an obligation to perform are those acts which must occur before there is a right to performance or before there is a breach of a contractual obligation. *Hohenberg Bros. Co. v. George E. Gibbons and Co.*, 537 S.W.2d 1, 3 (Tex. 1976). Although there are no particular words or phrases required to create a condition precedent, such terms as "if", "provided that", "on condition that", or some other term that conditions performance, must generally be used to show an intent for a condition rather than a promise. *Criswell v. European Crossroads Shopping Center, Ltd.*, 792 S.W.2d 945, 948 (Tex.1990). In the absence of such terms and if the intent of the parties to create a condition cannot be gathered from the contract as a whole, the obligation to perform will be treated as a promise rather than a condition. *Criswell*, 792 S.W.2d at 948; *Hohenberg*, 537 S.W.2d at 3. There is nothing in the agreement in this case to indicate that this sentence was intended to be a condition precedent rather than a mutual promise. We hold that Bartlett's obligation to perform under the handwritten agreement was, as a matter of law, a promise rather than a condition precedent and the trial court was correct in not submitting a question on the subject to the jury. The eighth and ninth points of error are overruled.

### FAILURE TO SUBMIT JURY QUESTION

In Point of Error No. Ten, Tubb faulted the trial court for its refusal to submit to the jury his requested question which (according to Tubb) related to Bartlett's failure to fulfill a condition precedent to any recovery.

■ Tubb's only requested question asked the jury whether it found from the

---

8. Defendant's First Amended Original Answer merely alleged under paragraph III: "Defendant is entitled to set off monies Plaintiff owes Defendant."

evidence "that Jim Bartlett fully performed under the terms of the indemnity agreement of July 29, 1989[.]" This requested question is not, in our estimation, properly worded to determine anything other than whether Bartlett had substantially performed his obligation under the agreement. At best, it assumes that Bartlett's obligation was a condition precedent to Tubb's performance. Furthermore, Tubb has no pleadings to support submission of a question on performance of a condition precedent. While it is true that a defendant need not specifically plead failure to perform a condition precedent in the absence of a plaintiff's allegation that it has performed conditions precedent, *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex. App.—Dallas 1983, writ ref'd n.r.e.), the trial court need not submit a requested question on a defensive issue unless it is supported by the pleadings, *Burditt v. Sisk*, 710 S.W.2d 114, 117 (Tex.App.—Corpus Christi 1986, no writ), and is in substantially correct form. *State Farm Fire & Casualty Co. v. Miller*, 713 S.W.2d 700, 703 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Point of Error No. Ten is overruled.

### AMBIGUOUS AGREEMENT

In Point of Error No. Sixteen, Tubb complains that his motion for JNOV should have been granted because the handwritten agreement was ambiguous and therefore unenforceable, and under his seventeenth point, he asserts that his motion for new trial should have been granted for the same reason.

### STANDARD OF REVIEW

 Whether a contract is ambiguous is a question of law for the court. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987). Absent an ambiguity, the construction of the contract is also a question of law. *Westwind Exploration, Inc. v. Homestate Savings Ass'n*, 696 S.W.2d 378, 381 (Tex.1985). Conclusions of law are always reviewable, *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.]), *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex.1985), and will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Simpson v. Simpson*, 727 S.W.2d 662, 664 (Tex.App.—Dallas 1987, no writ). Incorrect conclusions of law will not require reversal, however, if the controlling findings of fact will support a correct legal theory. *Valencia v. Garza*, 765 S.W.2d 893, 898 (Tex.App.—San Antonio 1989, no writ).

In our review of the handwritten agreement, we must look at the contract as a whole in light of the circumstances which existed when the contract was entered into. *Reilly*, 727 S.W.2d at 529. Tubb claims that the handwritten agreement is substantially lacking in clarification and definition. We disagree.

 An examination of the handwritten agreement identifies the parties and the subject of the indemnification. The agreement specifically limits the scope of indemnification to "all debts, and obligations, clams [sic] & demands, arising out of Big Horn energy, Otec. and its subsibiaries [sic]." The agreement includes a recitation of the consideration, that is Bartlett's promise to work with OTEC in a manner not to cause any detrimental effect on the operation of the school. Finally, the handwritten agreement was actually written by Tubb. He claims that Bartlett dictated the specific language, but Bartlett testified that he and Tubb discussed how it should be worded as Tubb wrote it out. In Texas, a writing is generally construed against its author to reach a reasonable result consistent with the intent of the parties. *Temple–Eastex Inc. v. Addison Bank*, 672 S.W.2d 793 (Tex.1984). While Tubb may have not been the sole author of the language used, he apparently had input and did the actual writing of the agreement. If Tubb didn't like the choice of language, he could have negotiated changes or simply refused to sign it. Although Tubb complains that handwritten agreement is ambiguous because it is inconsistent with the settlement agreement, it appears that the former was drawn up because Bartlett refused to sign the latter agreement without an indemnification agreement, and that both were signed at the same time and would have to be construed together. In substance, Bartlett in the settlement agreement released Tubb and

the other parties from liability for any claims and causes of action he had or could have against them arising out of their former business relationship. The handwritten indemnity agreement, on the other hand, bound Tubb contractually to indemnify Bartlett for any debts or claims made against him in connection with his former relationship as one of the owners of the trade schools. We conclude that the handwritten agreement is not ambiguous nor is it inconsistent with the settlement agreement, particularly when read with the latter agreement. Tubb's claim that the indemnity agreement is ambiguous as a matter of law lacks merit. The trial court properly denied Tubb's motion for JNOV and his motion for new trial. We overrule Points of Error Nos. Sixteen and Seventeen.

## DENIAL OF MOTION TO DISREGARD

Under his third through sixth points of error, Tubb claims trial court error in its denial of his motion to disregard the jury's finding in response to Question No. 2 because the question did not inquire into the parties' mutual intent, because it improperly inquired into Bartlett's subjective intent, because the evidence proved conclusively that the parties had mutually agreed to rescind the handwritten agreement, and because the finding is based upon legally insufficient evidence.

## STANDARD OF REVIEW

 A trial court may not set aside or disregard an answer to a special issue because the evidence is insufficient or against the great weight. *Wilfin, Inc. v. Williams*, 615 S.W.2d 242 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); *Browning v. West*, 557 S.W.2d 848 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); Tex.R.Civ.P. 301. A jury's answer to a special issue may be disregarded only when it has no support in the evidence or when the issue is immaterial. *U.S. Fire Ins. Co. v. Pettyjohn*, 816 S.W.2d 839, 841 (Tex.App.—Fort Worth 1991, no writ), citing *C & R Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966).

 Tubb's third and fourth points claim that the jury finding to Question No. 2

should have been disregarded because it did not inquire into the "mutual intent or understanding of the parties," and was based only on Bartlett's subjective intentions in rescinding the handwritten agreement rather than the parties' objective manifestation. These points are not legal sufficiency challenges to the jury's finding, but amount to challenges to the charge as given. Prior to the submission of the charge, Tubb made no objection regarding the form or substance of the proposed charge other than his complaint that it failed to inquire whether Bartlett had fully performed under the agreement. Specific objections to the court's charge must be made before the court has submitted the charge to the jury. *Dayton Hudson Corp. v. Altus*, 715 S.W.2d 670, 674 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *cert. dismissed*, 481 U.S. 1073, 107 S.Ct. 2471, 96 L.Ed.2d 364 (1987); Tex.R.Civ.P. 274. Failure to object to jury questions for form, substance, or omission, lack of definition or explanatory instruction, or on account of any defect, omission or fault in pleading before the charge is read to the jury waives any complaint on appeal. *Dayton Hudson*, 715 S.W.2d at 674; *First State Bank, Morton v. Chesshir*, 634 S.W.2d 742, 746 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.). A motion for JNOV or a motion to disregard jury findings is not the proper method for preserving error regarding the submission of special issues. *Dayton Hudson*, 715 S.W.2d at 674. Points of Error Nos. Three and Four are overruled.

Tubb's fifth and sixth points of error contend that the trial court erred in not disregarding the jury finding in answer to Question No. 2 because the evidence conclusively proved that parties had mutually agreed to rescind the handwritten agreement and the finding in answer to Question No. 2 is unsupported by legally sufficient evidence. We have previously concluded under Points of Error Nos. One and Two that the evidence did not conclusively establish that the parties had rescinded the handwritten agreement and the converse, that there was sufficient evidence to establish a binding indemnity agreement. The same evidence, when viewed in a light most favorable to the jury

finding, considering only the evidence and inferences that support the finding, is sufficient to withstand the no evidence challenge levied against jury Question No. 2. *See Boatright,* 790 S.W.2d at 728. The jury having heard all of the evidence, judged the witnesses' veracity and examined the agreements, was free to conclude that the only reason Tubb wanted the second agreement was so that any liability on the indemnity agreement would be shared by Bill Just. The fifth and sixth points of error are overruled.

## SETTLEMENT AGREEMENT DISPOSED OF ALL CLAIMS

We shall next consider Tubb's eleventh, twelfth, and thirteenth points of error in which he contends that the trial court erred in denying his motions to disregard and for new trial because the settlement agreement disposed of all claims, that even if valid, the settlement agreement would limit the effect of the indemnity agreement to "Bartlett's actions arising after July 29, 1989[,]" and that the judgment should be reformed so that the indemnity agreement will apply only "to the actions of James Bartlett after July 29, 1989."

### STANDARD OF REVIEW

A trial court may not set aside or disregard an answer to a special issue because the evidence is insufficient or against the great weight. TEX.R.CIV.P. 301; *Wilfin,* 615 S.W.2d 242; *Browning,* 557 S.W.2d at 848. A jury's answer to a special issue may be disregarded only when it has no support in the evidence or when the issue is immaterial. *Pettyjohn,* 816 S.W.2d at 841.

In his eleventh point of error, Tubb asserts that the settlement agreement precluded any obligation under the indemnity agreement. When two instruments pertain to the same event or transaction, they will be considered together even though they do not expressly refer to each other. *Hardeman v. Parish,* 730 S.W.2d 813, 814 (Tex.App.—El Paso 1987, writ ref'd n.r.e.). The undisputed evidence is that Bartlett and Tubb contemporaneously entered into the handwritten

agreement and the settlement agreement. Moreover, there is evidence that because he was faced with a potentially large liability for indebtedness created in behalf of the school, which he had guaranteed, Bartlett would not have agreed to settle with Tubb in the absence of an indemnity agreement and that Tubb was aware that claims had already been made on Bartlett at the time they entered into the settlement and indemnity agreements. Although we fail to see any conflict between the two agreements (under the settlement agreement, Bartlett compromised and settled any claims and causes of action that he had against Tubb and the others arising out of their former relationship while under the indemnification agreement, Tubb agreed to indemnify Bartlett for any debts, claims, and obligations arising out of Bartlett's former relationship with Big Horn, OTEC, and their subsidiaries), there were fact questions raised by legally sufficient evidence as to whether the rescission of the handwritten agreement was mutually agreed upon and if so, whether that rescission was conditioned on the execution of the second agreement by Bill Just. As previously indicated, Tubb failed to object to the questions in the charge as given, resulting in waiver of any claimed error. It is the duty of the judge and not the jury to construe the legal effect of the two instruments and to harmonize and give effect to all of the provisions, if possible, where there is no ambiguity. *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex.1983). As between the two agreements, we, as did the trial court, find no ambiguity and no conflict. Point of Error No. Eleven is overruled.

Under Points of Error Nos. Twelve and Thirteen, Tubb contends that if the indemnity agreement is held to be valid, the trial court still erred in its judgment by making it apply to all claims made against Bartlett including those made prior to the date the two agreements (indemnity and settlement) were signed as well as claims made thereafter. Here again, Tubb seems to confuse claims that Bartlett had against him and the others arising out of Bartlett's removal, covered by the settlement agreement, with claims made against Bartlett arising out of

his former relationship with Big Horn and OTEC (covered by the indemnity agreement). However, assuming that the indemnity agreement was ambiguous as to whether it applied to all claims made against Bartlett or only to those made against him after the agreement was signed, Tubb could have requested that a question in proper form be submitted to the jury inquiring as to the intent of the parties in that regard. Although he pled ambiguity, Tubb failed to request such a question. Failure to request an issue at trial waives that issue for purposes of appeal. *Dayton Hudson,* 715 S.W.2d at 674; *Pope,* 667 S.W.2d at 274; TEX.R.CIV.P. 279. Where, as here, there was some evidence but no jury finding on the intent of the parties, such finding will be deemed to have been made by the trial court in such manner as to support its judgment. *Poe v. Hutchins,* 737 S.W.2d 574, 578 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). The twelfth and thirteenth points of error are overruled.

### INDEMNIFICATION FOR LIABILITY OR FOR DAMAGES

In his Points of Error Nos. Fourteen and Fifteen, Tubb contends that the trial court erred by not determining whether the handwritten agreement created either an indemnity for liability or an indemnity for damages, it being his further contention that the language utilized in the agreement is only appropriate for an indemnification for damages and that the judgment should be reformed or a new trial granted to determine the scope of liability. In his response, Bartlett asserts that the court expressly or impliedly made a correct determination that the agreement was an indemnification for liability.

As both parties correctly point out, an indemnification agreement can be one either to indemnify against liability or to indemnify against damages. *Russell v. Lemons,* 205 S.W.2d 629, 631 (Tex.Civ.App.— Amarillo 1947, writ ref'd n.r.e.). In the case of a promise to indemnify against liability, a cause of action accrues to the indemnitee only when the liability has become fixed and certain, as by rendition of a judgment. *Hol-*

*land v. Fidelity & Deposit Co. of Maryland,* 623 S.W.2d 469, 470 (Tex.App.—Corpus Christi 1981, no writ); *Russell,* 205 S.W.2d at 631. With respect to a promise to indemnify against damages, a right to bring suit does not accrue until the indemnitee has suffered damage or injury by being compelled to pay the judgment or debt. *Holland,* 623 S.W.2d at 470; *Russell,* 205 S.W.2d at 631. Words of an indemnity agreement are to be given their ordinary or common meaning in determining the intent of the parties. *Hudson v. Hinton,* 435 S.W.2d 211, 214 (Tex.Civ.App.— Dallas 1968, no writ). The indemnitor is entitled to have his agreement strictly construed; his undertaking cannot be extended by construction or implication beyond its plain terms. *Hudson,* 435 S.W.2d at 214.

In our case, Tubb agreed "to indemnify JIM BARTLETT against all debts and obligations, claims and demands, arising out of BIG HORN ENERGY, OTEC, INC. and its subsidiaries." This is broad language, the plain meaning of which was that Tubb was undertaking to indemnify Bartlett not only whenever the latter suffered an actual loss or injury, but also at such time as his liability was determined, as by judgment or assessment. *Compare with Bernard v. L.S.S. Corp.,* 532 S.W.2d 409, 410 (Tex.Civ.App.— Austin 1976, writ ref'd n.r.e.) ("Tenant agrees to indemnify and save landlord harmless from all claims [including costs and expenses of defending against such claims] arising [or alleged to arise] from any act or omission of Tenant ..." construed as a promise to indemnify against liability.). It is obvious from the wording of the judgment which incorporated the broad language of the indemnity in its order that the trial court construed Tubb's promise as an agreement to indemnify against both liability and damage. The fourteenth and fifteenth points are overruled.

### ATTORNEY'S FEES

Tubb asserts in his eighteenth and nineteenth points that he was entitled to a new trial or to a reformation of the judgment because there is no provision in the indemnity agreement authorizing an award of attorney's fees which were therefore erroneously awarded and because the question of the

reasonableness and necessity of such fees was not submitted to the jury.

Under Texas law, an indemnitee may recover litigation costs incurred while enforcing an indemnity agreement even though such costs are not specifically covered by the agreement. *Continental Steel Co. v. H.A. Lott, Inc.*, 772 S.W.2d 513, 517 (Tex. App.—Dallas 1989, writ denied); *Fisher Construction Co. v. Riggs*, 320 S.W.2d 200, 211 (Tex.Civ.App.—Houston), rev'd on other grounds, 160 Tex. 23, 325 S.W.2d 126 (1959). The costs may be recovered based on a right implied by law or a right arising under the contract. *Continental Steel*, 772 S.W.2d at 517; *Fisher*, 320 S.W.2d at 211. The rationale of this doctrine is that were costs not recoverable, the indemnitee would not be fully protected and saved harmless against the claims covered by the indemnity agreement. *Continental Steel*, 772 S.W.2d at 517; *Fisher*, 320 S.W.2d at 211. We follow *Fisher* and *Continental Steel* in rejecting the assertion that litigation costs are not recoverable absent an express provision in the indemnity agreement.

Tubb also claims that no evidence was admitted regarding the reasonableness of Bartlett's litigation expenses incurred as a result of defending suits covered by the indemnity agreement. Tubb is simply mistaken in this contention. The record shows that Bartlett's attorney testified at trial regarding the nature and reasonableness of the litigation costs incurred and to be incurred as a result of defending suits covered under the indemnity agreement. The actual billing statements were also introduced into evidence. This evidence was sufficient as to the reasonableness of attorney's fees. Accordingly, the trial court correctly denied Tubb's Motion for New Trial. The eighteenth and nineteenth points are overruled.

### INDEMNITOR LIABILITY FOR TAX ASSESSMENTS

Under his twentieth point of error, Tubb contends that he is entitled to a new trial or a reformation of the judgment because the trial court erroneously concluded that the indemnity agreement covered tax assessments levied against Bartlett on account of OTEC's failure to pay withholding taxes. He

claims that because of the penal nature of the section of the Internal Revenue Code which imposes a 100 per cent penalty on a corporation which fails to pay such taxes and makes it possible to collect such delinquent taxes and penalties from the corporate officers, *Moore v. United States*, 465 F.2d 514, 517 (5th Cir.1972), *cert. denied*, 409 U.S. 1108, 93 S.Ct. 907, 34 L.Ed.2d 688 (1973); 26 U.S.C.A. § 6672 (West 1986 & Supp.1993), it is and should be against public policy to require indemnification for such taxes and penalties, *citing English v. Century Indemnity Co.*, 342 S.W.2d 366 (Tex.Civ.App.—San Antonio 1961, no writ). His reliance is misplaced. *English* stands for the proposition that if an indemnitee knew or should have known that the contract for the performance of which indemnification was obtained was illegal and therefore void, then the performance bond and the indemnity agreement are likewise void.

Public policy has nothing to do with case. The evidence is that the reason Bartlett wanted the indemnity agreement from Tubb at the time they settled the lawsuit was because he was well aware that there were a number of accounts owed and claims being made by various creditors. Although he did not know whether taxes had been paid at the time of the settlement, he did know at the time he was removed or left OTEC and West Texas Career Institute in October 1988, that there was a tax liability of over $90,000 for withholding, FICA, and other taxes and that there was approximately $80,000 in the bank with which to pay those taxes. In September 1989, Bartlett, who although no longer in control was still apparently carried as president of West Texas Career Institute, received a final tax assessment notice from Internal Revenue Service for withholding and FICA taxes owed by West Texas Career Institute. According to his testimony, this is precisely the kind of indebtedness or claim from which he insisted upon an indemnification agreement as part of the settlement. Point of Error No. Twenty is overruled.

### JUDGMENT NOT SUPPORTED BY FACTUALLY SUFFICIENT EVIDENCE

In his twenty-first and final point of error, Tubb asserts that the court should have

granted his motion for new trial because the judgment is against the great weight of the probative evidence. This is obviously a factual sufficiency challenge to the judgment as a whole.

 When a factual sufficiency challenge is brought, the court must first examine all of the evidence, *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986); and after considering and weighing all of the evidence, the court may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Since an appellate court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if the evidence would support a different result. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

Having reviewed the entire record in connection with the preceding points, we conclude from the evidence set forth elsewhere in this opinion that the judgment is not contrary to the great weight and preponderance of such evidence. The twenty-first point is overruled.

Judgment is affirmed.